M. G. FULTON, ADMISTRATRIX, v. NATIONAL BANK OF DENISON.

Decided March 27, 1901.

**1.—Consolidation of Suits—Harmless Error.**

The action of the trial court in refusing to consolidate suits will not be revised where no injury has resulted therefrom, the complainant not being entitled in either action to the relief sought.

**2.—Pledge of Stock—Lien—Decedent's Estate—Widow's Allowance.**

Where certificates of stock in another corporation were issued to the intestate and by the latter pledged and indorsed in blank to a bank as collateral to secure the payment of money advanced by the bank to purchase the stock, and the debt was still unpaid, the lien of the bank had the character of a vendor's lien, and was superior to the claim for allowances of the widow and children of the intestate. Rev. Stats., art. 2053.

**3.—Same—Burden of Proof.**

Where the widow or administratrix seeks to recover property pledged by her intestate, the burden is on her to show that the pledgee's claim is of a character which does not take precedence of her demands for allowances under the statute.

**4.—Same—Administrator's Right of Possession.**

An administratrix is not entitled to the possession of property of which her decedent at the time of his death was not in possession, nor entitled to possession, it having been pledged. Rev. Stats., art. 1869.

**5.—Same—Pledgee's Rights.**

The pledgee of certificates of stock is entitled to hold them as against an administrator of the pledgor, and to receive and enforce dividends or other benefits attached thereto so long as his claim is unsatisfied.

**6.—Same—National Bank Acquiring Other Stock as Collateral.**

Incidental to the power to loan money on personal security a national bank may, in the usual course of business, accept stock of another corporation as collateral, and by the enforcement of its rights as pledgee it may become the owner of the collateral; and even if it could not acquire title thereto, the pledgor could not recover the stock without satisfying the bank for its advances.

Appeal from Grayson.    Tried below before Hon. Don A. Bliss.

*J. D. Hazlitt* and *Galloway & Templeton,* for appellants.

*A. G. Barnes* and *Mosely & Smith,* for appellee.

JAMES, CHIEF JUSTICE.—The material facts in this case are as follows: A. Fulton (the intestate) acquired twenty-five shares of the stock of the Denison Compress Company on October 15, 1895; fourteen shares on March 7, 1897, and twenty-five shares about May 5, 1897. He had arranged with the bank (appellee) to advance the purchase money for these shares, and in each instance they were paid for by the bank, by paying a draft on it for the respective sums, to which drafts were attached the certificates of stock issued in the name of Fulton and indorsed by him in blank. There were eight shares of defendant's stock of same corporation in the possesion of the bank prior to October 15, 1895, which it held as collateral, but the testimony is silent as to whether or not the bank had advanced the money to pay for these eight shares. In December, 1898, the bank surrendered all these shares to the company, and in lieu of them received two certificates of stock issued in name of the bank, one for sixty-two shares and one for ten shares. Afterwards, at Fulton's solicitation, and for the purpose of enabling him to retain his place in the directory and to be secretary of the company, the bank turned back the certificate for ten shares and the same was reissued in Fulton's name, and he indorsed and replaced it with the bank. The bank has never been paid the sums shown to have been advanced for the sixty-four shares, except a small amount of interest credited which was derived from a dividend received by the bank upon the shares, and by an overdraft by Fulton on the bank, which overdraft was still unpaid. The evidence is that the money advanced for said shares with interest exceeds their value, in fact exceeds the value of the entire seventy-two shares. The bank has had possession of all the stock except as to the ten shares while the same was being reissued to Fulton and by him redeposited with the bank. The bank held Fulton's notes with the

stock thus pledged as its security.   Fulton died insolvent, and appellant, his widow, was his administratrix.

The bank held a further indebtedness against the partnershrip firm of A. Fulton & Co., composed of A. Fulton and A. B. Gernon.   The bank has, as security for this, forty-six bales of cotton.   The debt was for money advanced by the bank for the firm to buy the cotton; that is, the bank paid for the cotton to the parties from whom it was purchased, under a contract that the title to the cotton should remain in the bank until all indebtedness of A. Fulton & Co. to the bank should be paid, and that all the cotton should be deemed to be in the possession of the bank, and all receipts, bills of lading, and evidences of ownership thereof should be taken in the name of the bank and placed in the possession of the bank, or, if taken in the name of A. Fulton & Co., should be transferred to the bank and that the bank should have the power to sell the whole or any part of the cotton whenever it should deem it necessary for the security of the money advanced.   The cotton in question was received by the bank at the time of its purchase under said contract, and it still holds possession thereof.   A. B. Gernon, of the firm of A. Fulton & Co., survives, but it appears that he had by verbal arrangement with Fulton withdrawn from the firm and abandoned it to Fulton, which was done at a time when the partnership debts exceeded the assets, and it was therefore insolvent.

It appears that Fulton left his widow and minor children and unmarried daughters remaining with the family.   Also that Mrs. Fulton, his administratrix, had applied to the county court for a year's allowance, and allowance in lieu of exempt property.   To said application she caused the appellee bank to be made a party, and prayed that it be required to deliver said stock and said cotton to petitioner, upon allegations that it was necessary to use said stock and cotton to raise said allowances, and prayed that the stock and cotton be sold to realize same. From the order entered on this application in the county court the bank appealed, and the appeal was pending in the district court when this cause was tried.   The present case was brought in the district court by the administratrix, while said application for allowances, etc., was pending in the county court, and before it had been acted upon; and the purpose of this suit was to recover from the bank the possession of said stock and cotton for the purposes of administration, basing her right to possession upon the fact that the same was property of the estate and held merely as security for decedent's debts, and was subject to her claim for allowances, being the only property of the estate out of which such allowances can be made, and that she was entitled to hold and administer the same under the direction of the probate court.

The first assignment of error complains that the refusal of the court to consolidate with this cause the one pending on appeal.   This is ordinarily a matter that will not be reviewed.   Young v. Gray, 65 Texas, 99.   It is true if the causes had been consolidated and tried together, the plaintiff probably would have been before the court with a judgment

fixing the allowances, while, as it was, she went to trial without any judgment for allowances, the order of the county court in this respect having been dissolved by the appeal. But as we believe the existence of undisputed facts developed on this trial shows that plaintiff had not any right to the possession of the stock and cotton, nor had any right to subject it to the payment of allowances, if the same had been fixed, there was no injury to appellant in refusing to consolidate.

The court, upon the testimony adduced, directed the jury, in view of the undisputed evidence, to return a verdict in favor of defendant. We have stated substantially the facts, and pass over, as entirely immaterial matters, the second, third, fourth, and fifth assignments. The sixth assignment is that the court erred in directing a verdict for defendant, and in refusing to permit the case to go to the jury on the facts.

Our conslucions of the law are:

1. The testimony indisputably establishes that the consideration for the cotton and all the stock (except the eight shares) was paid by the bank, and not by Fulton, and that this had not been refunded by Fulton. If we view the relation of the bank to this property as a mere lienholder, the lien had the character of a vendor's lien, being for the consideration of Fulton's purchases, and such a lien is superior to any claim for allowances. Rev. Stats., art. 2053; Champion v. Shumate, 90 Texas, 602. This seems to us to be conclusive of the case in favor of the judgment rendered, except as to the eight shares which the testimony does not affirmatively show were paid for by the bank.

2. In reference to these eight shares, we are inclined to think that inasmuch as the shares were admittedly pledged, and this action is by the administratrix to recover possession thereof from the bank, it devolved upon plaintiff to affirmatively show that the bank's claim was of a character which did not take precedence of her demand for allowances, and as the testimony stood on this question the court properly refused to interfere with the possession.

We think further that under our statutes an administrator is not entitled to the possession of property of which the decedent was not in possession and not entitled to possession at the time of his death. Article 1869, Revised Statutes, enacts that "when a person dies intestate, all of his estate shall immediately vest in his heirs at law, but, with the exceptions aforesaid (meaning exempt property), shall still be liable and subject in their hands to the payment of the debts of the intestate; but upon the issuance of letters * * * of administration upon any such estate, the executor or administrator shall have the right to the possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid, and it shall be the duty of the executor or administrator to recover possession of and hold such estate in trust, to be disposed of in accordance with law." This statute does not authorize an administrator to assume or recover possession of property the possession of which the decedent had disposed of and was himself not entitled to. Fulton had neither possession of any of this property, nor was

entitled to its possession at his death. He had a right to acquire or regain possession of it by satisfying the creditor who held it, and his administrator has no better right.

But, independently of the reasons stated in the above paragraph, the expressed views of the Supreme Court are not in accord with plaintiff's contention that these pledged stocks were subject primarily to the payment of allowances to the widow and children. In Andrews v. Insurance Company, 92 Texas, 588, the court said: "If it be agreed that the policy was in Dyke's hands as collateral to secure the indebtedness to him, then he had the right to collect it and apply the proceeds to the payment of his debt, and his claim was superior to that of the plaintiff and her children." Citing Huyler v. Dohoney, 48 Texas, 234, and Williams v. Lumpkin, 74 Texas, 601. These were cases defining the status of a holder of notes as collaterals. We are of the opinion that a pledgee of certificates of stock is entitled to hold them as against an administrator of the pledgor, and is entitled to receive and enforce dividends or other benefits attaching thereto, so long as his claim is unsatisfied.

The proposition that defendant, being a national bank, can not acquire title to the stock of another corporation, is of no value to appellant under the facts of this case. In Bank v. Kennedy, 167 United States, 362, it was said: "No express power to acquire the stock of another corporation is conferred upon a national bank, but it has been held that, as incidental to the power to loan money on personal security, a bank may, in the usual course of doing such business, accept stock of another corporation as collateral, and by the enforcement of its rights as pledgee it may become the owner of the collateral and be subject to liability as other stockholders," citing Bank v. Case, 99 United States, 628. The transaction in the present case was in the exercise of the incidental power above mentioned, and not an unauthorized dealing in stocks. But, in any event, appellant would not be permitted to recover the stocks without satisfying the bank for its advances. Bank v. Townsend, 139 U. S., 67.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.